[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: POST JUDGMENT MOTIONS 
Before the court are several post judgment motions filed by the parties relating to custody, alimony and support.[1] The court held an evidentiary hearing thereon, on February 23, 24 and 25, 1998.
The marriage on the parties was dissolved on August 23, 1991. At that time, there were two minor children, issue of the marriage, Sean, born April 22, 1978, and Triona, born April 20, 1980.
At the time of the dissolution the parties entered into a written separation agreement which was incorporated by reference into the decree of dissolution. In relevant part, the agreement provided that the parties would share joint legal custody of the children, with the plaintiff having primary physical custody of Triona, and the defendant having primary physical custody of Sean. Para 5. The agreement also provided that the defendant would pay the plaintiff, as unallocated alimony and support, the sum of $1,000.00 per month from September 1, 1991 to August 30, 1993 and $500.00 per month from September 1, 1993 to August 30, 1997.[2] Para 6(a) and (b). The agreement further provided that in the event physical custody of Triona should transfer from the plaintiff to the defendant prior to August 30, 1997, than the plaintiff would pay to the defendant child support according to the child support guidelines, retroactive to the beginning of the month following the change in physical custody. Para 6(d). Also, CT Page 7668 depending upon who had physical custody of the children beginning September 1, 1997, the non-custodial parent would pay child support to the custodial parent in accordance with the guidelines. Para 6(e). Finally, the agreement provided that" the periodic alimony payments. . . contemplate the continued partial employment of the mother and the full employment of the father." Para 6(f).
The parties' son, Sean, remained in the custody of the defendant at least until he reached the age of majority, and his circumstances are not at issue here. The circumstances concerning the parties' daughter. Triona are another matter. Triona remained in the physical custody of the plaintiff until August, 1995, when she began to live with the defendant. She remained in the custody of the defendant for only a short time, until approximately December, 1995 . During this August to December period, financial orders were modified so that the defendant paid the plaintiff the reduced amount of $200.00 per month. Triona than resumed living with the plaintiff when the plaintiff relocated to Ohio in January, 1996. At that time, or shortly thereafter, the defendant resumed his unallocated alimony and support payments in the sum of $500.00 per month. See, stipulation, dated April 10, 1996. However, Triona was not finished moving. In February, 1997 Triona left the plaintiff in Ohio and returned to the defendant here in Connecticut. It was at or about this time, in February, 1997, that the defendant last made any alimony or support payments to the plaintiff. Triona continued to live with the defendant through the date of these hearings, in late February, 1998, and presumably through the date of her own majority on April 20, 1998.[3]
On March 27, 1997, the defendant filed a motion to modify custody from the plaintiff to the defendant, and to modify child support and alimony orders "as appropriate." The plaintiff filed a motion for contempt and modification of physical custody and of alimony. on April 4, 1997. In it, the plaintiff concurs that physical custody of Triona be awarded to the defendant. The plaintiff also sought that the defendant be held in contempt for failure to make payments in March and April, 1997, and that alimony not terminate as scheduled on August 31, 1997, but that it extend beyond that date and that the amount be modified to reflect "the changes in circumstances."
The court first considers the financial circumstances of the parties, beginning with the plaintiff, comparing them between CT Page 7669 those that existed at the time of the dissolution of this marriage, and now. Avella v. Avella, 39 Conn. App. 669, 672
(1995).
The plaintiff is fifty two years old. At the time of the divorce, she was a secretary, part time for United Parcel Service. Her financial affidavit at the time showed her earning $221.00 per week, gross, $182.00 per week, net.[4] Following her employment at U.P.S., the plaintiff was a customer service representative at American Frozen Foods at about $6.00 to $7.00 an hour, for one and a half years, and then held various jobs with the Olston Agency, a temporary service, again at about $7.00 an hour until she relocated to Ohio in December, 1995-January, 1996. In Ohio, she had a very short stint at Dial America, in customer service, making $100.00 to $110.00 net per week, then at Banc One in customer service, full time, making about $8.00 an hour. She held this job from December, 1996 to February. 1997, when she was let go because she lacked computer skills. This was also at about the time her daughter, Triona, left to go back to her father in Connecticut. The plaintiff went back to Dial America, part time again, where she averaged about $106.00 net, per week. The court further notes that this sum is below the self support reserve for child support purposes. Reg. § 46b-215a-14.
Since May, 1997, the plaintiff has been employed full time, with minimal over time, in customer service doing computer work at Executive Jet, in Ohio. She earns $9.00 an hour, or $360.00, gross, per week. Her net income is as stated on her financial affidavit, $231.00 per week. However, the court does add back in her weekly 401k contribution of $45.00 for a total net of $276.00. The court does not consider her overtime for purposes of child support calculations, according to its discretion and the regulations. Reg. § 46b-215a-3 (b)(6)(D).
From the court's perspective, it appears that the plaintiff's financial circumstances have, for the most part, been coming together. She has her own apartment, she is current with her bills, she manages to contribute to a differed compensation plan, she is no longer medicated, as she was before for health reasons, and she has been receiving computer training to enhance her job skills in that regard. She has also taken the initiative to attend classes in counseling, although she is not certain whether she will pursue a career in that field. But, in all, the plaintiff is "hopeful" about the future. CT Page 7670
The court next examines the financial circumstances of the defendant. At the time of the dissolution, in August, 1991, the defendant was self-employed as a financial planner or adviser. His affidavit at the time shows weekly earnings of $700.00, both on a gross and net basis. In the ten years before the divorce, he was employed in the same general field. The court notes that he worked for well know names in the securities industry, such as Merrill Lynch, E. F. Hutton and Advest, and he made substantially better monies then, than he did in 1991 or now. He has a bachelors of arts degree from Fordham and a business degree from the Wharton School, in Pennsylvania. However, he left his last employer, Advest, in 1988 to help with the family household and the children.
The defendant has, consequently, not done as well financially as one might have expected from a person with his educational and professional pedigree. He continues in the financial planning business with a relatively small number of regular clients. He works through a broker dealer on a commission basis. His gross earnings, before taxes from his business were approximately $17,600.00 in 1993, $14,800.00 in 1994, $15,100.00 in 1995 and $21,300.00 in 1996. He states "things have gotten better". However, he is currently earning $610.00, gross per week, $460.00. net. In addition, he works one evening a week at the YMCA as a personal trainer making another $25.00 dollars per week net. As with the plaintiff, the court does not consider this small extra money in making its orders. Infra, p. 5
It is not lost on the court that the plaintiff has made a considerable effort to show that the defendant is under employed, or that he reflects considerably greater business expenses than are customary and appropriate, thereby deflating his earnings from business. However, the court believes that the plaintiff has fallen short in attempting to do this. The court does not believe it can reliably draw any inferences or conclusion from the manner or amount of the defendant's business expenses from year to year. Therefore, the court accepts the defendant's earnings as shown on his current financial affidavit.
That said, the court makes one exception in this regard. The defendant testified that he covers the deficiency between his income and expenses from 'outside sources", to wit, borrowings from his father, gifts from his father and the extension of his available credit lines. Specifically, the defendant testified that his father has "gifted" him about $2,000.00 to $3,000.00 per CT Page 7671 year. Therefore, the court uses the lower end of this range to arrive at a figure of $40.00 per week, net, which should be included in the defendant's stated net income. See, Unkelbach v.McNary, 244 Conn. 350, 360-361 (1998).
Based upon the foregoing, the court concludes that there has not been a substantial change in the circumstances of the parties from the date of the dissolution until now, to warrant a modification of the term of the alimony beyond August 31, 1997. Further, for purposes of calculating alimony and child support for the periods of time, below, the court does so in the following manner. The court determines that the plaintiff's net income is $276.00 per week, and the defendant's is $500.00 per week. This produces a combined net income of $776.00 per week, and a basic support obligation for one child, of $191.00 per week. The plaintiff's decimal share of the obligation is 36%, or $69.00, and the defendant's decimal share is 64%, or $122.00. The court reduces the plaintiff's $69.00 share by 15%, to $58.00, without having, according to the guidelines, to give an explanation for this downward departure. The plaintiff's $58.00 per week child support obligation is than extrapolated to $250.00 per month.
The court then examines three distinct periods. From March 1, 1997 to May 1, 1997 is a period of two months. The plaintiff owes nothing to the defendant by way child support during this period, inasmuch as the plaintiff's earnings were below the guidelines self support reserve. The defendant owes the plaintiff alimony in the sum of $250.00 per month ($500.00 unallocated less $250.00 support), for a total due the plaintiff of $500.00. The second period is between May 1, 1997 and August 23, 1997, when the alimony terminated, or 3.77 months. For this period, the plaintiff owes the defendant $250.00 per month for 3.77 months, or $943.00, in child support for Triona. Conversely, the defendant owes the plaintiff the same sum in alimony, $250.00 per month for 3.77 months, or $943.00. Therefore, this period is a "wash" between the parties. The final period is between August 23, 1997 and April 20, 1998, Triona's eighteenth birthday, or a period of 7.9 months. The plaintiff owes the defendant the sum of $250.00 per month for 7.9 months, or $1,975.00. No alimony is owed by the defendant to the plaintiff during this period.
When the above numbers are netted against one another, the plaintiff owes the defendant the sum of $1,475.00. The court adds to this sum $150.00, that being the balance due the defendant CT Page 7672 from the plaintiff as the result of Triona's orthodontic treatment, per the stipulation of the parties. The guidelines would presume an arrearage payment of $29.00 per week until satisfied, but the court will deviate to $5.00 per week inasmuch as that is the relief requested by the defendant. Reg. §46b-215a-5 (b)(2).
To summarize, the defendant's motion to modify custody, dated March 27, 1997 is granted nunc pro tunc. The plaintiff's motion for contempt is denied, for modification of physical custody is granted, and for alimony is granted in part and denied in part,nunc pro tunc, consistent with this opinion. The court finds that there is an arrearage due the defendant by the plaintiff in the sum of $1,625.00, and the court orders that the plaintiff make payments thereon at the rate of $5.00 per week until the arrearage is satisfied.
Further, the plaintiff's motion for contempt, dated October 30, 1997 concerning the parties' tax liability is denied, but orders may enter as appear on record as the agreement of the parties. Similarly, the plaintiff's motion for order regarding taxes, dated February 10, 1998 is granted, again as appears on record as the agreement of the parties.
So Ordered By
KAVANEWSKY, J.